JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: thwang@murraylaw.com

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>**PACIFIC METRO, LLC**<br>A California Limited Liability Company,<br>fka The Thomas Kinkade Company,<br>LLC, fka Media Arts Group, Inc.<br><br>                  Debtor.<br><br>900 Lightpost Way<br>Morgan Hill, CA 95037<br><br>Employer Tax I.D. No.: 26-3534146 | Case No. 10-55788-RLE-11<br><br>Chapter 11<br><br>Date: *[subject to entry of order shortening time]*<br>Time:<br>Place: United States Bankruptcy Court<br>       280 S. First St., Room 3099<br>       San Jose, CA 95113<br>Judge: Honorable Roger L. Efremsky |

**MOTION FOR ORDER AUTHORIZING DEBTOR TO HONOR**
**PRE-PETITION WAGES AND EMPLOYEE OBLIGATIONS**

**TO: THE HONORABLE ROGER L. EFREMSKY, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; SECURED CREDITORS; THE TWENTY (20) LARGEST CREDITORS; AND OTHER PARTIES IN INTEREST**

The Debtor and Debtor in Possession in the above captioned bankruptcy case, Pacific Metro, LLC, a California Limited Liability Company, (the "Debtor"), hereby moves for an order: (i) authorizing, but not requiring, the Debtor to honor and pay accrued, pre-petition employee wages and expense reimbursements (collectively, the "Pre-Petition Wages"); (ii) authorizing, but not

requiring, the Debtor to honor accrued vacation and Personal Time Off (together, "PTO")[1] and to allow its employees to use pre-petition accrued PTO in the ordinary course; and (iii) to the extent that certain banks and other financial institutions are required to receive, process, honor, and pay checks presented for payment by its employees, to comply with procedures and honor all funds transfer requests made by the Debtor relating thereto (the "Employee Obligations Motion").

This Employee Obligations Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS (the "Omnibus Notice"), the DECLARATION OF FRANK TERUEL IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion. By a separate application, Debtor has requested an order shortening time for notice and setting a hearing on this matter and the other "first day" motions on an expedited basis.

### I. JURISDICTION

1. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a) and 363(b).

### II. HISTORY AND RELEVANT FACTS

**A.  History and Events Leading to the Debtor's Bankruptcy**

3. A detailed discussion of the Debtor's history, description of its businesses, its assets and liabilities, and the events that led to its need for bankruptcy relief are set forth in the MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY AND (5) GRANTING RELATED RELIEF (the "Cash Collateral Motion") and the Omnibus Declaration filed concurrently herewith and incorporated herein by reference.

**B.  The Bankruptcy Filing**

4. On June 2, 2010, (the "Petition Date"), the Debtor filed a voluntary petition under

---

[1] The Debtor includes vacation benefits in the PTO provided to its employees.

Chapter 11 (the "Bankruptcy Case") of the United States Bankruptcy Code. The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

5. No official committee of unsecured creditors has been formed in the bankruptcy case to date.

**C. The Debtor's Chapter 11 Business Plan**

6. Prior to the Petition Date, the Debtor met its working capital needs through a secured credit facility originally extended to the Debtor by Bank of America, N.A. through a revolving credit note, which note has been purchased by the Debtor's affiliated senior secured creditor, LPA Properties, L.P. (the "Lender"). Pursuant to the Cash Collateral Motion, the Debtor seeks authority to incur further borrowings to the extent necessary and use cash collateral of the lender in accordance with an agreement which will fund continuing operations pursuant to a 13-week rolling budget (the "Budget") prepared by the Debtor, a copy of which is attached as **Exhibit "A"** to the Omnibus Declaration. The use of cash collateral and post-petition secured financing is necessary to fund continuing operations, pay employees, generate further inventory and receivables and thereby maintain the going concern value of the Debtor's business, pending the confirmation of a plan of reorganization.

**D. The Debtor's Workforce**

7. The Debtor's workforce currently includes thirty-one (31) full-time employees across sales, customer service, assembly, and highlighting functions, located generally in three sites throughout Northern California. Prior to the Petition Date, the Debtor through a reduction-in-force laid off certain employees. As of the Petition Date, the Debtor had no employment agreements with any personnel, and all employment is "at will" employment.

8. The Debtor's workforce is critical to its business operations. Each of the Debtor's employees is essential not only to the continued, uninterrupted operation of the Debtor's business, but to effectuating the orderly administration of the Debtor's bankruptcy case and a successful plan of reorganization. The Debtor's remaining employees have distinct experience and expertise that are vital to the Debtor's operations.

9. Amongst other things the Debtor requires its remaining employees to execute the development, marketing, manufacturing and customer service functions associated with its unique products. Failure to meet commitments and to maintain relationships with customers and suppliers will open the door to competitors and will eliminate revenue and growth. As a result, the Debtor's business will lose its going concern value, and its assets, including its customer relations, will be harmed.

**E.      Pre-Petition Wages**

10. Prior to the Petition Date, the Debtor funded payroll through its payroll processor, Automatic Data Processing, Inc. Due to the Debtor's bankruptcy filing in the middle of a pay period, pre-petition wages accrued prior to the Petition Date. Payroll for the Debtor's exempt employees were paid through May 31, 2010, and payroll for its non-exempt employees was paid through May 24, 2010. The Debtor typically pays its employees on a bi-monthly basis, and its next payroll is scheduled on June 14, 2010. The Debtor distributes payroll through checks.

11. The Debtor believes that the aggregate amount of the Pre-Petition Wages is $12,343.00. The Debtor believes there are no employees who are owed more than $11,725 in wages which was earned within 180 days of the Petition Date. In any event, if applicable, any amount owed above the statutory priority limit of $11,725 will not be paid, but will instead be treated as a general unsecured claim in the Debtor's bankruptcy case.[2] All post-petition employee wages shall be paid in the ordinary course.

**F.      Pre-Petition PTO**

12. In the ordinary course, the Debtor provides allotted PTO to its employees. Through this Employee Obligations Motion, the Debtor requests authority to continue to honor PTO earned by current employees and to allow such employees to use pre-petition accrued PTO in the ordinary course of business. Accrued PTO which remains unused, expires. Through the Petition Date, the Debtor's employees have accrued PTO which in aggregate amounts to approximately $46,260.00 in value.

---

[2] Section 507(a)(4) provides that an employee is entitled to priority to the extent of $11,725 earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual.

13. The Debtor does not intend to "cash out" PTO benefits to current employees at this time but only intends to honor such benefits by allowing employees to use PTO in the ordinary course. The Debtor does not believe that any current employee has accrued PTO within 180 days of the bankruptcy filing which exceeds in amount the $11,725 limit established by § 507(a)(4).[3]

14. In the event of a post-petition termination, if applicable, employees will be entitled to a pre-petition priority claim up to $11,725.00, earned within 180 days of the bankruptcy filing, with the balance being a general unsecured claim.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

15. The Debtor is authorized to use property of the estate other than in the ordinary course of business pursuant to Bankruptcy Code § 363(b)(1). The bankruptcy court has discretion regarding 363(b) motions requesting use, sale or lease of property of the estate outside the ordinary course of business. *See In re North Brand Partners*, 200 B.R. 653, 656 (9th Cir. BAP 1996). The Debtor is required to show that a sound business purpose justifies the use, sale or lease of property of the estate under § 363(b)(1). *See, e.g., Stephens Indus., Inc., v. McClung*, 789 F.2d. 386, 389-90 (6th Cir. 1986); *Committee of Equity Sec. v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d. 1063, 1071 (2d Cir. 1983); *In re Lady H Coal Co., Inc.,* 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-176 (D. Del. 1991).

16. The Debtor has the burden of demonstrating a valid use, sale or lease of property of the estate outside the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d. at 1070-71. After the debtor has articulated a rational business judgment, a presumption exists that the business decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the Debtor. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*citing Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). A party who objects to the use, sale or lease of the estate s property must produce evidence supporting its objection. *See, e.g., In re Montgomery Ward Holding*

---

[3] Even when combined with Pre-Petition Wages, the Debtor believes that no current employee exceeds the limit set forth by § 507(a)(4). In any event, the Debtor seeks authority only to honor, and not to pay, PTO in the ordinary course.

*Corp..* 242 B.R. 147, 155 (Bankr.D.Del. 1999) (*citations omitted*).

17. It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a chapter 11 case is critical to a successful reorganization. As the court noted in *In re Chateauguay Corporation*, "[e]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effectively reorganize during the Chapter 11 process." 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (*citations omitted*).

18. Here, the Debtor believes that its failure to satisfy outstanding obligations to its employees will create concern and discontent among its employees, and adversely affect the employees' esprit de corps. Moreover, it would undermine the Debtor's ability to retain its employees. If the Debtor cannot promptly assure its employees that their wages will be paid and their accrued PTO will be honored, immediate and irreparable harm may result due to the employees' relocating or resigning prior to the consummation of a successful reorganization. The Debtor's ability to honor payroll and accrued PTO is integral to maintaining continuity and order to the Debtor's business activities through the retention of its employees. This is especially critical in this case because the Debtor business model requires significant interaction with suppliers and customers. Employee dissatisfaction would quickly and negatively impact production and sales, as well as business relationships that have been developed over many years. At this critical state of the case, the Debtor cannot risk a significant disruption in its operations caused by low employee morale.

19. The Debtor believes that under the Budget, it will have sufficient operating cash to satisfy its obligations to employees, including both the Pre-Petition Wages and post-petition salaries, as they come due in the ordinary course of the Debtor's business. Moreover, under the Budget, the Debtor will be able to honor Pre-Petition Wages and accrued PTO for all employees up to the $11,725.00 per employee limit set by § 507(a)(4) in the ordinary course of business.[4] In addition, the Debtor submits that the relevant time periods for which payment is requested fall within the 180

---

[4] As set forth above, no employees have exceeded the limit established under § 507(a)(4). In any event, the Debtor intends only to honor PTO at this time. In the instance that the Debtor decides to pay any outstanding PTO along with Pre-Petition Wages, it will do so as allowed within the limit established under § 507(a)(4).

days prior to the filing of the petition as required by § 507(a)(4). As its employees are necessary to maintain the value of the Debtor as a going concern, the Debtor believes that the relief requested herein is modest in light of the perceived benefit to the bankruptcy estate. Permitting the Debtor to satisfy its obligations to its employees by paying Pre-Petition Wages (including expense reimbursements) and honoring accrued vacation and PTO, is grounded on sound business judgment consistent with §§ 363, 1107 and 1108 of the Code.

20. To further maintain the continuity and preserve the morale of the Debtor's employees, and to maintain the viability of the Debtor's business pending consummation of a successful reorganization, the Debtor respectfully requests that this Court grant the relief requested herein.

21. No previous request for relief sought in this Employee Obligations Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

1. Granting the Debtor's Employee Obligations Motion;

2. Authorizing the Debtor, in its sole discretion, to honor and to pay outstanding Pre-Petition Wages (including expense reimbursements) and PTO accrued by its employees up to a maximum of $11,725.00 per employee;

3. Authorizing the Debtor, in its sole discretion, to allow its employees to use pre-petition accrued PTO in the ordinary course;

4. Authorizing and requiring applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment by each employee and to honor all fund transfer requests made by the Debtor relating to the foregoing employee obligations; and

5. For such other relief as this Court deems just and proper.

Dated: June 8, 2010

**MURRAY & MURRAY**
A Professional Corporation

By: */s/ Robert A. Franklin*
    Robert A. Franklin
    Attorneys for Debtor