JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: thwang@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PACIFIC METRO, LLC**<br>A California Limited Liability Company,<br>fka The Thomas Kinkade Company,<br>LLC, fka Media Arts Group, Inc.<br><br>　　　　Debtor.<br><br>900 Lightpost Way<br>Morgan Hill, CA 95037<br><br>Employer Tax I.D. No.: 26-3534146 | Case No. 10-55788-RLE-11<br><br>Chapter 11<br><br>Date: *[subject to entry of order shortening time]*<br>Time:<br>Place: United States Bankruptcy Court<br>　　　　280 S. First St., Room 3099<br>　　　　San Jose, CA  95113<br>Judge: Honorable Roger L. Efremsky |

**MOTION FOR ORDER:**
**(I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE;**
**(II) DEEMING UTILITIES ADEQUATELY ASSURED OF PAYMENT; AND**
**(III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS**
**FOR ADDITIONAL ADEQUATE ASSURANCE OF PAYMENT**
**(11 U.S.C. § 366)**

Pacific Metro, LLC, a California Limited Liability Company, the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"), hereby moves pursuant to section 366 of the Bankruptcy Code,[1] for an order (i) prohibiting its utilities from discontinuing services, (ii)

---

[1] Unless otherwise stated, all statutory references are to Title 11 of the United States Code ("Code" or "Bankruptcy Code") as amended by Congress and enacted by the President on April 20, 2005 unless otherwise specified herein.

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 1 of 12

1    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

determining that its utility companies are adequately assured of payment, and (iii) establishing procedures to determine requests for additional adequate assurance of payment pursuant to section 366(c)(3) (the "Utilities Motion").

This Utilities Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS (the "Omnibus Notice"), the DECLARATION OF FRANK TERUEL IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion. By a separate application, the Debtor has requested an order shortening time for notice and setting a hearing on this matter and the other "first day" motions on an expedited basis.

## I. JURISDICTION

1. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a) and 366.

## II. HISTORY AND RELEVANT FACTS

### A. History and Events Leading to the Debtor's Bankruptcy Case

3. A detailed discussion of the Debtor's history, description of its businesses, its assets and liabilities, and the events that led to its need for bankruptcy relief are set forth in the MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY AND (5) GRANTING RELATED RELIEF (the "Cash Collateral Motion") and the Omnibus Declaration filed concurrently herewith and incorporated herein by reference.

### B. The Bankruptcy Filing

4. On June 2, 2010, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 (the "Bankruptcy Case") of the United States Bankruptcy Code. The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 2 of 12

2    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

5. No official committee of unsecured creditors has been formed in the bankruptcy case to date.

**C.     The Debtor's Chapter 11 Business Plan**

6. Prior to the Petition Date, the Debtor met its working capital needs through a secured credit facility originally extended to the Debtor by Bank of America, N.A. through a revolving credit note, which note has been purchased by the Debtor's affiliated senior secured creditor, LPA Properties, L.P. (the "Lender"). Pursuant to the Cash Collateral Motion, the Debtor seeks authority to incur further borrowings to the extent necessary and use cash collateral of the Lender in accordance with an agreement which will fund continuing operations pursuant to a 13-week rolling budget (the "Budget") prepared by the Debtor, a copy of which is attached as **Exhibit "A"** to the Omnibus Declaration. The use of cash collateral and post-petition secured financing is necessary to fund continuing operations, pay employees, generate further inventory and receivables and thereby maintain the going concern value of the Debtor's business, pending the confirmation of a plan of reorganization.

**D.     The Utility Companies**

7. In connection with the operation of its business, the Debtor uses electricity, gas, water, garbage and telephone services (collectively, the "Utility Services") from various utility companies, four (4) of which are vital to its operations (collectively, the "Utility Companies").

8. Historically, the Debtor has consistently paid all invoices to the Utility Companies when due in the ordinary course of its business and is current on all amounts due to the Utility Companies. To the best of the Debtor's knowledge, there are no defaults or arrearages of any significance with respect to any invoices with the Utility Companies.

### III.     RELIEF SOUGHT

9. Section 366(c) provides that in a case under chapter 11, a utility company may discontinue its services thirty (30) days after the date of the filing of a petition, if a debtor has not furnished adequate assurance of payment.

10. Pursuant to §§ 105(a) and 366, the Debtor seeks entry of an interim order (the "Interim Order"): (i) determining that the Utility Companies have been provided with adequate

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 3 of 12

3    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

assurance of payment within the meaning of section 366 pending the entry of a final order granting the relief sought herein (the "Final Order"); (ii) prohibiting the Utility Companies from altering, refusing or discontinuing services on account of pre-petition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance pending entry of the Final Order; (iii) determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed by this Motion, pending entry of the Final Order; (iv) approving the Debtor's proposed procedures governing the Utility Companies' requests for additional or different adequate assurance; (v) establishing procedures for the Utility Companies to seek to opt out of the Debtor's proposed adequate assurance procedures; and (vi) scheduling a final hearing on the Motion to consider the relief requested herein on a final basis (the "Final Hearing").

11. Preserving the Utility Services on an uninterrupted basis is essential to the Debtor's ongoing operations, and, therefore, to the success of its reorganization. Indeed, any disruption of the Utility Services, even for a brief period of time, would disrupt the Debtor's ability to operate and maintain its business. As described in the Omnibus Declaration, the Debtor manufactures, develops and sells unique visual artwork. Therefore, its operations require the appropriate environment by which its employees, including artists, may thrive. Not only does the Debtor rely on telecommunications to communicate with customers and suppliers, it requires the other basic utilities such as electricity, gas and water necessary to provide a suitable workplace. Any interruption in its utilities would severely and negatively impact the Debtor's operations. Such a result could seriously jeopardize the Debtor's reorganization efforts, and ultimately, the Debtor's value and creditors' recoveries. It is therefore critical that the Utility Services continue uninterrupted during this Chapter 11 case.

**A.** **Adequate Assurance**

12. If the Cash Collateral Motion is approved, with the continuing access to the Lender's cash collateral, the Debtor will have sufficient cash resources to meet its post-petition obligations in the ordinary course of business, including payments to the Utility Companies as they become due.

13. The Debtor proposes to make cash deposits with each of the Utility Companies identified in the below table, equal to two weeks of the average utility cost incurred by the Debtor

Case: 10-55788 Doc# 18 Filed: 06/08/10 Entered: 06/08/10 13:56:09 Page 4 of 12

4 MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

with respect to each respective Utility Company, for the twelve (12) month service period immediately prior to the Petition Date (each, an "Adequate Assurance Deposit"):

| *Provider* | *Service* | *Proposed Deposit* |
|---|---|---|
| Pacific Gas & Electric | Electric & Gas (Three locations) | $4,181 |
| City Of Morgan Hill | Waste & Water (Morgan Hill location) | $131 |
| South Valley Disposal | Waste & Water (Gilroy location) | $956 |
| Verizon California | Business Phone (Morgan Hill location) | $364 |
| **Total** | | $5,632 |

14. The Debtor submits that the Adequate Assurance Deposits, in conjunction with the Debtor's ability to pay for future Utility Services in the ordinary course of business, constitutes sufficient adequate assurance to the Utility Companies. If any Utility Company believes additional assurance is required, it may request such assurance pursuant to the procedures set forth below at Section III.B of this Utilities Motion.

**B.      Objection Procedures**

15. In light of the severe consequences to the Debtor of any interruption in services by the Utility Companies, but recognizing the right of the Utility Companies to evaluate the proposed adequate assurance on a case-by-case basis, the Debtor proposes that the Court approve and adopt the following procedures (the "Adequate Assurance Procedures"):

(i) Within two (2) business days after entry of the Interim Order, the Debtor will mail a copy of the Interim Order to the Utility Companies;

(ii) Failure to object within thirty (30) days of the Petition Date or object to compliance with the Adequate Assurance Procedures will be deemed a consent to the Debtor's Adequate Assurance Payment and waive any right to seek additional adequate assurances during the course of this case;

(iii) Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve on the Debtor a pleading: (a) setting forth the

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 5 of 12

5     MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

location for which utility services are provided; (b) summarizing the Debtor's payment history relevant to the affected account, including any security deposits; and (c) explaining why the Utility Company believes the Debtor's Adequate Assurance Payment is insufficient (an "<u>Adequate Assurance Request</u>");

    (iv) Upon the Debtor's receipt of any Adequate Assurance Request, the Debtor shall have the greater of: (a) twenty (20) days from the receipt of such Adequate Assurance Request, or (b) forty-five (45) days from the Petition Date (collectively, the "<u>Resolution Period</u>") to negotiate with such Utility Company to resolve such Utility Company's request for additional assurance of payment. The Debtor may resolve any objection by mutual agreement with the Utility Company and without further order of the Court, and provide additional adequate assurance of payment, including, but not limited to, cash deposits, prepayment, and other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable;

    (v) If the Debtor determines that such request is not reasonable or is unable to reach an alternative resolution with an objecting Utility Company, the Debtor, during or immediately after the Resolution Period, may file a Motion for Determination of Adequate Assurance of Payment (a "<u>Determination Motion</u>") and set such motion for hearing at the Court's discretion (a "<u>Determination Hearing</u>") pursuant to section 366(c)(3);

    (vi) Pending any Determination Motion or Determination Hearing, any objecting Utility Company shall be deemed to have received adequate assurance of payment under § 366 without the need for payment of additional deposits or other securities until an order of the Court is entered in connection with such Determination Motion or Determination Hearing.

**C.  Opt-Out Procedures**

  16. Historically, utility providers carried the burden of showing that adequate assurances proposed by chapter 11 debtors were insufficient. As discussed in greater detail below, section 366, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>"), arguably shifts the burden onto debtors to provide adequate assurances the utility providers find satisfactory and to seek court review if the utility providers do not accept the proposed adequate assurance. Here, under this reading of revised section 366, a Utility Company could, on

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 6 of 12

6

MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

the twenty-ninth day following the Petition Date, announce that the Debtor's Adequate Assurance is not acceptable, coerce a deposit or prepayment from the Debtor and threaten to terminate utility service the next day unless the Debtor complies with the demand. While the Debtor does not concede that this is a correct reading of revised section 366, the Debtor nonetheless believes it is prudent to require Utility Companies to raise any objections to the Debtor's Adequate Assurance so that objections may be heard within the first thirty (30) days after the Petition Date.

17. Therefore, the Debtor proposes that if a Utility Company wishes to opt-out of the Adequate Assurance Procedures set forth above, the Court should schedule a hearing within thirty (30) days of the Petition Date and issue a ruling on the amount of adequate assurance to be provided to that specific Utility Company. Accordingly, the Debtor proposes the following opt-out procedures summarized herein (the "Opt-Out Procedures"):

(i) Any Utility Company that objects to the Adequate Assurance Procedures must file a written objection (the "Procedures Objection") and serve such objection on the Debtor so that it is actually received by the earlier of: (a) fifteen (15) days after the entry of the Interim Order, or (b) five (5) business days prior to the Final Hearing;

(ii) The Debtor may, in its discretion, resolve any Procedures Objection by mutual agreement with the Utility Company and without further order of the Court and may, in connection with any such agreement, in its discretion, provide a Utility Company with additional adequate assurance of payment, including, but not limited to, cash deposits, pre-payments, and/or other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable;

(iii) If the Debtor determines that the Procedures Objection is not reasonable and is unable to reach a prompt consensual resolution with the Utility Company, the Procedures Objection will be heard at the Final Hearing;

(iv) All Utility Companies that do not timely file a Procedures Objection are deemed to consent to the Adequate Assurance Procedures and shall be bound by the Adequate Assurance Procedures. The sole recourse of any Utility Companies that does not timely file a Procedures Objection shall be to submit an Adequate Assurance Request pursuant to the Adequate

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 7 of 12

7    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

Assurance Procedures pursuant to which Utility Company shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor pending any Determination Hearing.

**D.  Final Hearing Date**

18. In order to resolve any Procedures Objection within thirty (30) days of the Petition Date, the Debtor requests that the Court schedule a Final Hearing on any unresolved Procedures Objection approximately twenty-five (25) days after the Petition Date.

### IV.  MEMORANDUM OF POINTS AND AUTHORITIES

19. Section 366 of the Bankruptcy Code provides:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a).

20. A utility company's right under a chapter 11 case to alter, refuse, or discontinue service to the debtor is governed by section 366(c). Subject to the consent of the utility company as to its adequacy, the Bankruptcy Code, as amended, provides for and enumerates acceptable forms of "assurance of payment" under section 366(c)(1). The debtor is given the option to choose one of the acceptable forms of assurance of future payment that it deems reasonable under the circumstances of the case. Providing one of the enumerated forms of assurance of payment is deemed proper to provide assurance of payment to a utility company. To the extent that the amount of such assurance of payment is not satisfactory to a utility company, section 366(c)(3)(a) provides a mechanism through which a utility company, as a party in interest and desiring an increase or modification in the amount or manner of assurance of payment, may petition the court for a modification after a noticed hearing.

21. Bankruptcy courts have the exclusive responsibility for determining what constitutes adequate assurance of payment for post-petition utility charges, and are not bound by local or state regulations. *In re Begley*, 41 B.R. 402, 405-406 (Bankr. E.D. Pa. 1984), *aff'd* 760 F.2d. 46 (3d Cir. 1985). The amendments to section 366 do not alter a court's responsibility. Indeed, section
Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 8 of 12

8    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

366(c)(2) must be read in conjunction with section 366(c)(3) in that utility companies are required to have a hearing before the court to obtain a modification of the amount of adequate assurance posted by the debtor and cannot act unilaterally to alter, refuse or discontinue service without a noticed hearing.  Qualifying the utilities' rights with the word "may" implies permission to act as opposed to the absolute right to alter, refuse or discontinue utility services to the debtor.  11 U.S.C. § 366(c)(2). To hold otherwise would render section 366(a) meaningless.  While section 366(c)(3) explicitly identifies factors that cannot be considered for determining adequate assurance of payment, determinations of adequate assurance under section 366 should remain within the court's authority. *See, e.g.*, *In re Marion Steel*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983); Bertrand Pan & Jennifer Taylor, *Sustaining Power: Applying U.S.C. § 366 in Chapter 11 Post and BAPCPA*, 22 Bank. Developments Journal 371, 382 (Emory University School of Law - Spring 2006).

22.     "Adequate assurance" under section 366 is not synonymous with "adequate protection."  In determining adequate assurance, the court need not require the debtor to provide a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of non-payment for post-petition services.  *See In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982); *In re George C. Frye Co.,* 7 B.R. 856, 858 (Bankr. D. Me. 1980).  Further, in making its decision as to the need for any post-petition deposit, the court should ensure that the utility company is treating the debtor the same as it would treat a similarly situated, non-bankruptcy customer.  *In re Whitaker*, 84 B.R. 934, 937 (Bankr. E.D. Pa. 1988), *aff'd* 882 F.2d. 791 (3d Cir. 1989).  The utility must be protected from an unreasonable risk of nonpayment, but it must also act in good faith.

23.     Moreover, the terms of adequate assurance of payment should not be such a financial burden upon the debtor as to thwart or deter the rehabilitation potential of the debtor, and thereby be an unreasonable demand.  *In re Marion Steel,* 35 B.R. at 199.  While the Debtor recognizes that the foregoing cases were decided prior to the amendments to section 366, the Debtor believes that the principles of reasonableness advanced by such cases remain applicable despite the amendments to section 366, given the opportunity afforded by section 366(c)(3)(A), supplemented by section 105, for a party in interest to request a modification of the amount of an assurance of payment.  *In re*

tth:
R:\Pacific Metro, LLC\Pld\MO 1st Day\Utilities mot.O.doc

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 9 of 12

9    MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM
ALTERING, REFUSING OR DISCONTINUING SERVICE; (II)
DEEMING UTILITIES ADEQUATELY ASSURED . . .

*Lucre*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005); *In re Syroco*, 374 B.R. 60 (Bankr. D. Puerto Rico 2007) (granting motion similar to the utilities motion herein).

24. Because utilities are afforded adequate assurances unavailable to other creditors, a utility should in good faith consider whether a proposed deposit is adequate assurance. *See In re Lucre, Inc.*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005); Bertrand Pan & Jennifer Taylor, *Sustaining Power: Applying 11 U.S.C. § 366 in Chapter 11 Post-BAPCPA*, 22 Bankr. Dev. J. 371, 388-91 (2006). As noted by one commentator, "[I]f Congress did not intend to require utilities to negotiate in good faith, 366(c)(1)(B) would seem to be extraneous. . . . [S]ubsection (c)(1)(B) ensures a court may not find a utility has failed to act in good faith by flatly rejecting a debtor's offer of an administrative expense priority." *Id*. at 390. Consequently, utility companies that require additional adequate assurances are expected to be reasonable in their demands.

25. Here, the Debtor believes that providing the Utility Companies a cash deposit, equivalent to two weeks of the average utility cost incurred by the Debtor with respect to each respective Utility Company, for the twelve (12) month service period immediately prior to the Petition Date, is consistent with what a Utility Company would expect from any similarly situated non-debtor entity who has failed to pay its utility bills. In consideration with (a) the historical absence of any material pre-petition defaults or arrearages and (b) the inclusion in the Budget for the Adequate Assurance Deposits as well as ongoing monthly charges for Utility Services, the Utility Companies should be assured that the Debtor has the capacity to meet its post-petition obligations.

26. Moreover, the Debtor proposes that the foregoing method of providing adequate assurance be without prejudice to any Utility Company's rights to move this Court for additional assurance or modification of the amount of assurance of payment within thirty (30) days from the Petition Date. Section 366(c)(3) allows the Utility Companies to seek a modification of the amount of assurance of payment or additional adequate assurance upon notice and a Court hearing which affords further protection to the Utility Companies.

27. The Debtor believes that the Adequate Assurance Procedures detailed at Section III.B above are consistent with the intent of section 366 as amended, are not prejudicial to the rights of any Utility Company, and are in the best interest of the Debtor's estate and its creditors. The Debtor

10

MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

Case: 10-55788  Doc# 18  Filed: 06/08/10  Entered: 06/08/10 13:56:09  Page 10 of 12

submits that the Adequate Assurance Procedures, if approved, will ensure that the Debtor's business operations are not jeopardized by any disruption in Utility Service while promoting judicial economy and addressing any issues that may arise under section 366.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

1. Granting the Utilities Motion;

2. Pending the entry of the Final Order, determining that the Adequate Assurance Deposits made by the Debtor in the amount of a cash deposit equivalent to two weeks of the average utility cost incurred by the Debtor with respect to each respective Utility Company, for the twelve (12) month service period immediately prior to the Petition Date to each respective Utility Company, constitutes adequate assurance of payment by the Debtor to each Utility Company pursuant to section 366(c)(1) of the Code;

3. Prohibiting the Utility Companies from altering, refusing or discontinuing services on account of pre-petition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance pending entry of the Final Order;

4. Determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed by this Utilities Motion, pending entry of the Final Order;

5. Providing that any request by a Utility Company for additional adequate assurance shall be made in accordance with the Adequate Assurance Procedures as detailed at Section III.B. above;

6. Providing that, in the event a Determination Motion is filed or a Determination Hearing is scheduled, any objecting Utility Company shall be deemed to have received adequate assurance under section 366 of the Code without need for payment of additional deposits or other securities until an order of the Court is entered in connection with such Determination Motion or Determination Hearing;

7. Scheduling a Final Hearing approximately 25 days after the Petition Date to hear any Procedures Objection; and

/ / /

/ / /

11

MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .

Case: 10-55788    Doc# 18    Filed: 06/08/10    Entered: 06/08/10 13:56:09    Page 11 of 12

1.     8.     Granting such other and further relief as the Court may deem just and proper.

Dated: June 8, 2010            **MURRAY & MURRAY**
A Professional Corporation

By:  */s/ Robert A. Franklin*
     Robert A. Franklin
     Attorneys for Debtor

Case: 10-55788   Doc# 18   Filed: 06/08/10   Entered: 06/08/10 13:56:09   Page 12 of 12

12   MOTION FOR ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED . . .