JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
LAURENT CHEN (191661)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: lchen@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PACIFIC METRO, LLC**<br>A California Limited Liability Company,<br>fka The Thomas Kinkade Company,<br>LLC, fka Media Arts Group, Inc.<br><br>Debtor.<br><br>900 Lightpost Way<br>Morgan Hill, CA 95037<br><br>Employer Tax I.D. No.: 26-3534146 | Case No. 10-55788-RLE-11<br><br>Chapter 11<br><br>Date: TBA<br>Time: TBA<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3099<br>San Jose, CA 95113<br>Judge: Honorable Roger L. Efremsky |

## EXHIBIT B

## To

## MOTION FOR ORDER UNDER SECTIONS 105 AND 365(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO REJECT NONRESIDENTIAL REAL PROPERTY LEASES AS OF THE PETITION DATE AND <u>ESTABLISH BAR DATE FOR LEASE REJECTION CLAIM</u>

# SUBLEASE

The Thomas Kinkade Company, LLC, a California limited liability company ("Sublessor"), and Flextronics International USA, Inc., a California corporation ("Sublessee"), make this Sublease as of July 17, 2008.

## Preliminary Statement

Sublessor is the tenant under a certain Lease dated December 20, 1999, by and between Media Arts Group, Inc (the predecessor in interest to Sublessor) and TBI – Mission West, LLC (the "Lessor"), as Landlord, as amended by that certain First Amendment to Lease dated July 6, 2000, that certain Second Amendment to Lease dated December 3, 2002, that certain Third Amendment to Lease dated November 11, 2004, and that certain Fourth Amendment to Lease dated as of the date of this Sublease (the "Fourth Amendment"), said Lease, as so amended, being hereinafter referred to as the "Lease" being attached hereto as Exhibit A, with respect to premises consisting of approximately 155,520 rentable square feet in the building (the "Building") commonly known as 925 Lightpost Way, Morgan Hill, California, as more particularly described in the Lease (the "Demised Premises"). Capitalized terms used but not defined in this Sublease shall have the meaning ascribed to such terms in the Lease.

Sublessor desires to sublet to Sublessee, and Sublessee desires to accept from Sublessor, the Demised Premises, on the terms and conditions set forth in this Sublease.

## Agreement

In consideration of the mutual covenants of this Sublease and other valuable consideration, the receipt and sufficiency of which Sublessee and Sublessor hereby acknowledge, Sublessor and Sublessee agree as follows:

1. **Demised Premises.** Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Demised Premises subject to the terms and conditions of this Sublease. Subject to the provisions of Section 2 hereof, Sublessor shall deliver the Demised Premised to Sublessee on August 1, 2008, hereinafter the "Commencement Date", with all heating, ventilation, air conditioning, electrical, plumbing, and all other systems, fixtures, components, and equipment in good working order and repair as well as in good operating condition except as otherwise provided herein and otherwise in such condition as exists as of the date of this Sublease, free of all occupants other than Sublessee.

2. **Term.** The term of this Sublease (the "Sublease Term") shall commence on the Commencement Date and shall terminate on July 31, 2015, or such sooner date upon which the Sublease Term may expire or terminate under this Sublease or pursuant to law; provided, however, following execution of this Sublease, Sublessee shall have the exclusive right to use and occupy, for any and all purposes permitted hereunder, including without limitation preparing the Demised Premises for occupancy, constructing the initial tenant improvements, and conducting its business operations, (i) those portions of the Demised Premises shown as "#1" on Exhibit B attached hereto ("Area 1"), no later than July 14, 2008, (ii) those portions of the

Demised Premises shown as "#2" on said Exhibit B ("Area 2"), no later than July 25, 2008, (iii) those portions of the Demised Premises shown as "#3" on said Exhibit B ("Area 3"), no later than August 15, 2008, and (iv) those portions of the Demised Premises shown as "#4" on said Exhibit B ("Area 4"), no later than September 15, 2008; provided further, no such access, use and/or occupancy by Sublessee shall materially interfere with Sublessor's use and occupancy of the portions of the Demised Premises then occupied by Sublessor pursuant to the provisions hereof. In the event that Sublessee shall not have received delivery of the sole and exclusive possession of the entire Demised Premises on or before September 15, 2008, then (A) the Abatement Period (as hereinafter defined) shall be extended by ten (10) days for each day of delay in the delivery of the entire Demised Premises to Sublessee, not as a penalty but as a good faith estimate of the damages incurred by Sublessee on account such delay, and (B) if such delay continues through September 22, 2008, then at any time thereafter Sublessee may, at its option, terminate this Sublease by written notice to Sublessee.

3. Use. Sublessee shall use and occupy the Demised Premises for research and development, manufacturing, warehousing, and as office space, and any other uses permitted by law, provided however, Sublessee shall obtain the prior consent of Lessor for any use of the Demised Premises not permitted by the Lease. Sublessee shall also comply with all laws governing or affecting Sublessee's use of the Demised Premises.

4. Monthly Base Rent. Beginning on the Commencement Date, Sublessee shall pay rent at a monthly rate of $85,536.00 ("Base Rent") on the first day of each calendar month during the Sublease Term. Thereafter, on the first anniversary of the Commencement Date and continuing annually thereafter, the monthly Base Rent will increase 3% and is calculated to be as follows:

    Beginning August 1, 2009, Base Rent = $88,102.00
    Beginning August 1, 2010, Base Rent = $90,745.00
    Beginning August 1, 2011, Base Rent = $93,467.00
    Beginning August 1, 2012, Base Rent = $96,271.00
    Beginning August 1, 2013, Base Rent = $99,159.00
    Beginning August 1, 2014, Base Rent = $102,134.00

If the Sublease Term includes a partial calendar month at its beginning or end, the monthly Base Rent for such partial month shall be prorated for each day in such partial month within the Sublease Term and shall be payable in advance on the first day of such partial month occurring within the Sublease Term.

From the Commencement Date through April 30, 2009 (the "Abatement Period"), all Base Rent shall be abated, such that Sublessee shall be responsible only for the components of Additional Rent, as defined and set forth in Section 6 below, during the applicable portions of the Abatement Period.

The Base Rent and Additional Rent shall be paid to Lessor at such address as Lessor shall designate in writing, in lawful money of the United States of America, without demand, deduction, offset or abatement. All such amounts received by Lessor shall be applied against any monthly rent and additional rent payable by Sublessor under the Lease.

5. **Tenant Improvement Allowance.** Sublessor shall pay Sublessee the sum of up to $933,120.00 to be used by Sublessee for its permanently affixed real property improvements within the Demised Premises, which sum shall be paid in one or more disbursements (but not more than once per calendar month) within thirty (30) days following receipt of documentation reflecting that Sublessee either has paid such amounts or owes such amounts to contractors and/or suppliers, together with conditional lien release and waiver forms executed by the contractor and all subcontractors, laborers and materialmen through the period covered by Sublessee's request for payment, and unconditional lien release and waiver forms executed by the contractor and all subcontractors, laborers and materialmen covered by Sublessee's request for payment for the prior period.

6. **Operating Expenses and Utilities.** From and after the day that Sublessee shall have received delivery of the sole and exclusive possession of the entire Demised Premises, Sublessee shall commence paying all utilities for the Demised Premises, and prior thereto Sublessor shall pay all utilities for the Demised Premises. Sublessee shall pay all of the other sums payable under Section 5.4 of the Lease and all other additional rent and other charges payable under the Lease by Sublessor (collectively with utilities and other sums payable under said Section 5.4, "Additional Rent"), as tenant under the Lease, at the same time and in the same manner (including estimated monthly installments) as is provided in the Lease, with respect to Area 1 when Sublessor shall have delivered to Sublessee the sole and exclusive possession of all of Area 1, with respect to Area 2 when Sublessor shall have delivered to Sublessee the sole and exclusive possession of all of Area 2, with respect to Area 3 when Sublessor shall have delivered to Sublessee the sole and exclusive possession of all of Area 3, and with respect to Area 4 when Sublessor shall have delivered to Sublessee the sole and exclusive possession of all of Area 4.

7. **Renewal / Extension.** Sublessee shall have the right to extend the Sublease Term for one additional period of 34 months (from August 1, 2015 through May 31, 2018) by giving Sublessor at least nine months written notice prior to the expiration of the Sublease Term of Sublessee's election to extend. The Base Rent rate will be Fair Market Rental Rate, as defined below ("FMRR"). All other terms and conditions of this Sublease (except for provisions relating to rent abatement during an Abatement Period and tenant improvement allowances) will apply to the extension term.

    (a) **Fair Market Rental Rate.** Once Sublessee elects to exercise Sublessee's right to extend the Sublease, Sublessee and Sublessor shall determine the Fair Market Rental Rate in the following manner:

        (i) FMRR shall be equal to the prevailing monthly market rental value for comparable space in the Morgan Hill, California area, including all escalations, at which tenants, as of the commencement of the applicable extended term, are leasing non-renewal, non-encumbered, non-equity space in comparable buildings for a comparable term, with the exception being that the monthly rent upon renewal will not be less than the Base Rent being paid in the final month of the Sublease term.

(ii) Within ten (10) days of receipt of Sublessee's notice to extend the Sublease Term, Sublessor shall notify Sublessee in writing of Sublessor's initial suggestion for FMRR (the "Initial Suggestion"). In the event that Sublessee shall object to the Initial Suggestion, then Sublessee shall so notify Sublessor in writing within ten (10) days of receipt of the Initial Suggestion. Sublessor and Sublessee shall attempt to agree upon the FMRR using their best good-faith efforts. If Sublessor and Sublessee fail to reach agreement within ten (10) days following Sublessee's objection to the Initial Suggestion (the "Outside Agreement Date"), then Sublessee may give written notice ("Appraisal Notice") to Sublessor that Sublessee desires to have the FMRR determined by appraisal pursuant to the procedures set forth in paragraphs (iii)-(vi) below.

(iii) Within ten days after Sublessor's receipt of Sublessee's Appraisal Notice, Sublessor and Sublessee shall agree upon a list of three independent MAI appraisers with at least five years full-time experience in appraising commercial properties within ten miles of the Demised Premises. Within five days after agreement upon the list of appraisers, Sublessor and Sublessee shall meet and each shall have the right to disqualify one of the appraisers until only one appraiser (the "Appraiser") has not been disqualified by either the Sublessor or Sublessee.

(iv) Within fifteen days after the appointment of the Appraiser, the parties shall each submit their determination of the FMRR to the Appraiser, and the Appraiser shall independently determine the FMRR. The FMRR shall equal the FMRR submitted by Sublessor or Sublessee that is closest to the FMRR determined by the Appraiser. The Appraiser shall not divulge to Sublessor or Sublessee the FMRR determined by the Appraiser until both parties instruct it to do so in writing. The determination of the Appraiser in accordance with this subsection (a) shall be final and binding on the parties and a judgment may be rendered thereon in a court of competent jurisdiction.

(v) If the parties fail to select the three qualified appraisers or the Appraiser, an appraiser shall be selected by the then-Presiding Judge of the Superior Court of the County in which the Demised Premises are located, acting in his individual judicial capacity.

(vi) The cost of appraisal shall be paid by Sublessor and Sublessee equally.

8. Right of First Refusal on Expansion Space. In the event that Sublessor shall receive a letter of intent (an "LOI") with respect to the subleasing of any portion of the property known as and numbered 900 Lightpost Way, Morgan Hill, California (the "ROFR Property"), Sublessor shall deliver a copy of the LOI to Sublessee. Sublessee shall have the right to notify Sublessor in writing within fifteen (15) days after receipt of the LOI that Sublessee desires to enter into a sublease upon the terms and conditions set forth in the LOI. In the event that Sublessee shall fail to so notify Sublessor within said fifteen (15) days, then Sublessee's right of first refusal hereunder shall be deemed to have expired and Sublessor shall have the right to enter into a sublease for such space with any third party substantially upon the terms and conditions set forth in the LOI, or upon terms and conditions less favorable to such third party; provided, however, that if Sublessor has failed to enter into a sublease within one hundred twenty (120) days after the expiration of such fifteen (15) day period, then Sublessor shall not have the right to enter into any sublease for such space without first giving Sublessee another right of first refusal with

respect thereto, on the terms and conditions set forth above. Notwithstanding anything to the contrary herein contained, Sublessee acknowledges and agrees that (a) Pacific Gas & Electric, Inc. ("PG&E"), a current subtenant of Sublessor in a portion of the ROFR Property, has a right of first refusal (the "ROFR") with respect to the subleasing of space in the balance of the ROFR Property, which ROFR must be exercised within ten (10) days after notice from Sublessor of its intent to sublease any space within the balance of the ROFR Property, and (b) all of Sublessee's rights under this Section are subject to the release or other termination of the ROFR with respect to any such space in the ROFR Property.

9. Parking and Signage. Sublessee shall have the exclusive use of 386 parking spaces (nine of which are for handicapped use) as located on Exhibit C attached hereto, throughout the Sublease Term. Notwithstanding the foregoing, the parties acknowledge and agree that the locations of some of such parking spaces may need to be changed by the mutual good faith agreement of the parties in order to accommodate Sublessee's initial tenant improvements, provided that Sublessee shall in all events be entitled to an equivalent number of parking spaces. Sublessee shall have the same signage rights as are available to Sublessor under the Lease.

10. Equipment and Personal Property. Sublessor hereby transfers and conveys to Sublessee all of Sublessor's right, title, and interest in and to the following, all of which shall be conveyed by Sublessor on an "as-is" basis without any representation or warranty whatsoever:

   (i)   Mezzanine Structure in the Warehouse;

   (ii)  All compressors currently located within the Demised Premises.

   (iii) Certain office furniture currently located within the Demised Premises, which shall be mutually agreed to by Sublessor and Sublessee within three (3) business days from the date hereof.

11. Lease/Subordination to Lease.

   (a) This Sublease is subject and subordinate to the terms and conditions of the Lease. If the Lease terminates before the end of the Sublease Term, Sublessor shall not be liable to Sublessee for any damages arising out of such termination, except if the Lease terminates due to default by Sublessor under the Lease, Sublessor shall be liable to Sublessee for all direct, non-consequential damages arising out of such termination.

   (b) Except as otherwise expressly provided to the contrary in this Sublease or except to the extent the terms and conditions of the Lease are inconsistent herewith (i) all of the rights and obligations conferred and imposed by the Lease on the "Tenant" thereunder are hereby conferred and imposed upon Sublessee, and all of the rights conferred by the Lease upon the "Landlord" thereunder are hereby conferred upon Sublessor, and (ii) the terms and conditions of the Lease applicable to the Demised Premises are hereby incorporated herein by reference as if Sublessor were "Landlord" and Sublessee were "Tenant" thereunder. Notwithstanding the foregoing or any other provision of this Sublease to the contrary, Sublessee expressly agrees that (i) Sublessor shall not be obligated to perform, and shall not be liable or responsible for the performance or

failure of performance by Lessor of, any of the obligations of Lessor under the Lease nor shall Sublessor be deemed to make, or be liable or responsible for the breach of, any representation or warranty made by Lessor under the Lease (to the extent the same relate to the Demised Premises or otherwise), (ii) Sublessee shall not require any performance by Sublessor hereunder with respect to the Demised Premises which is performable by Lessor for the benefit of Sublessor under the Lease and (iii) Sublessee shall have no claim against Sublessor for any default, breach or failure of performance or other misconduct of Lessor under the Lease or otherwise. Without limitation of the foregoing, Sublessor shall have no obligation during the Sublease Term to render any services (such as those Lessor provides to Sublessor under the Lease) to Sublessee with respect to the Demised Premises or to expend any money for the preservation or repair of the Demised Premises. Sublessor hereby assigns to Sublessee, on a non-exclusive basis in common with Sublessor, all of Sublessor's rights and remedies, as tenant under the Lease, arising in connection with a default by Lessor in the performance of its obligations under the Lease, including without limitation all rights to enforce such obligations by legal proceedings or otherwise. Upon request of Sublessee and at Sublessee's cost, Sublessor shall cooperate with Sublessee in its efforts to cause Lessor to perform its obligations under the Lease. Upon request of Sublessee and at Sublessee's cost, Sublessor shall pursue any such proceedings or enforcement actions.

(c) During the Term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease (but after the Commencement Date), Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Lessor, each and every obligation of Sublessor under the Lease with respect to the Demised Premises except to the extent inconsistent with this Sublease, and except for any restoration obligation which may exist under the Lease, including without limitation Sections 12 and 13 thereof, with respect to any alterations or damage to the Demised Property prior to the date hereof. The obligations that Sublessee has assumed are hereinafter referred to as the "Sublessee's Assumed Obligations". Without limitation of the foregoing, the following provisions of the Lease shall be inapplicable to this Sublease: Sections 1 (except that Subsections 1.1, 1.2, 1.5, and 1.8 shall apply), 2, 4, 5.1, 5.2, 7, 8, 9, 24, 27, 30, 32, 33, 34, 35, 36, 38, 40, 41, 42, 43, 44, and the Fourth Amendment.

(d) Sublessee shall indemnify, defend and hold harmless Sublessor from and against any and all liabilities, judgments, damages, claims, demands, losses, costs and/or expenses (including, without limitation, reasonable attorneys' fees and expenses), arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations. Sublessor shall indemnify, defend and hold harmless Sublessee from and against any and all liabilities, judgments, damages, claims, demands, losses, costs and/or expenses (including, without limitation, reasonable attorneys' fees and expenses), arising out of Sublessor's failure to comply with or perform any obligations under the Lease other than the Assumed Obligations, other than indirect or consequential damages.

(e) The Sublease Term shall expire and come to an end on its stated expiration date or any earlier termination hereof or concurrently with any termination of the Lease for any reason.

12. **Assignments and Subleases.** Sublessee shall not voluntarily or by operation of law assign, transfer (collectively, "assign" or "assignment"), or sublet all or any part of Sublessee's interest or obligations in this Sublease or in the Demised Premises without Sublessor's prior written consent, which Sublessor shall not withhold unreasonably. Notwithstanding the foregoing, Sublessee may assign this Sublease without Sublessor's written consent and without releasing Sublessee from its obligations under the Sublease to any entity which controls, is controlled by, or is under common control with Sublessee, or to any entity resulting from the merger of or consolidation with Sublessee ("Sublessee's Affiliate"). In such case, Sublessee's Affiliate shall assume in writing all of Sublessee's obligations under this Sublease.

13. **Insurance.** During the Sublease Term, Sublessee shall maintain insurance of such types, in such policies, with such endorsements and coverages, and in such amounts as are set forth in Section 20.3 of the Lease. All insurance policies shall name Lessor and Sublessor as additional insureds and loss payees and shall contain an endorsement that such policies may not be modified or canceled without 30 days prior written notice to Lessor and Sublessor. Sublessee shall promptly pay all insurance premiums and shall provide Lessor and Sublessor with policies or certificates evidencing such insurance and shall comply with the provisions of the Lease.

14. **Default.** Without limiting other events of default under the Lease, in the event of a default by Sublessee in the full and timely payment and performance of its obligations under the Sublease, which default shall remain uncured for seven (7) days after notice from Sublessor in the case of a monetary default or thirty (30) days in the case of a non-monetary default (which thirty-day period shall be extended for so long as Sublessee is diligently prosecuting cure in the case of a default which can not reasonably be cured within thirty days) with such notice to be in lieu of, and not in addition to, any notice required under California Code of Civil Procedure Section 1161 or any similar or successor law), Sublessor shall have all of the rights and remedies in the Lease with respect to defaults by the tenant under the Lease.

15. **Brokers.** Sublessor and Sublessee each represent and warrant to the other that it has not dealt with any broker other than Commercial Property Services ("CPS") and Colliers International, Inc. ("Colliers") in connection with the consummation of this Sublease. Sublessor and Sublessee each shall indemnify and hold harmless the other against any loss, damage, claims or liabilities arising out of the failure of its representation or the breach of its warranty set forth in the previous sentence. Sublessor shall be solely responsible for the payment of any brokerage commission due to CPS and Colliers, in accordance with a separate written agreement between Sublessor and Colliers. Colliers shall pay CPS the portion of such commission which may be due to CPS pursuant to a separate written agreement between Colliers and CPS.

16. **Notices.** All notices and demands under this Sublease shall be in writing and shall be effective upon the earlier of (i) receipt at the address set forth below by the party being served, or (ii) two business days after being sent to address set forth below by United States certified mail, return receipt requested, postage prepaid, or (iii) one business day after being sent to address set forth below by a nationally recognized overnight delivery service that provides tracking and proof of receipt.

If to Sublessor:
The Thomas Kinkade Company, LLC
900 Lightpost Way
Morgan Hill, CA 95037
Attn: Legal Department

If to Sublessee:
Flextronics International USA, Inc.
2090 Fortune Drive
San Jose, California 95131
Attn: Mario Ochoa

With a copy to:
Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street
25th Floor
Boston, MA 02199-7610
Attn: Mark S. LaConte, Esq.


Either party may change its address for notices and demands under this Lease by notice to the other party.

17. <u>Sublessor's Representations and Warranties</u>. Sublessor warrants and represents that:

(i) the copy of the Lease attached to this Sublease as <u>Exhibit A</u> is a complete and accurate copy of the Lease, which is in effect and has not been amended except as set forth in <u>Exhibit A</u>;

(ii) To Sublessor's actual knowledge, Lessor is not in default under the Lease, nor has any event occurred which, after any applicable notice and/or the expiration of any grace period, shall constitute a default by Lessor under the Lease;

(iii) Sublessor is not in default under the Lease, nor has any event occurred which, after any applicable notice and/or the expiration of any grace period, shall constitute a default by Sublessor under the Lease;

(iv) All rent, additional rent and other charges due under the Lease have been paid as billed or required in the normal course through July 31, 2008; and

(v) The term of the Lease expires on May 31, 2018.


18. <u>Sublessor Covenants</u>. Sublessor shall, in its capacity as tenant under the Lease, perform and fulfill all of its covenants, obligations and agreements under the Lease in accordance with the provisions thereof in all material respects, and shall not do anything which would cause the

Lease to be terminated or forfeited. Sublessor shall indemnify and hold Sublessee harmless from and against any and all claims, liabilities, losses, damage, demands, expenses (including, without limitation, reasonable attorney's fees), actions and causes of action of any kind whatsoever that Sublessee may suffer, incur or be liable by reason of any breach or default on the part of Sublessor or its employees or agents, in its capacity as tenant under the Lease which is not caused by Sublessee or its default hereunder, by reason of which the Lease may be terminated or forfeited. Sublessor covenants that it will not enter into any agreement that will modify or amend the Lease so as to adversely affect Sublessee's right to use and occupy the Demised Premises or any other rights of Sublessee under this Sublease, or increase or materially affect the obligations of Sublessee under this Sublease. Further, Sublessor will promptly provide Sublessee with copies of all written notices of default that Sublessor delivers to, or receives from, the Lessor under the Lease.

19. Entire Agreement. This Sublease contains all of the agreements, conditions, warranties and representations relating to the sublease of the Demised Premises and may be amended or modified only by written instruments executed by both Sublessor and Sublessee.

20. Consent. Notwithstanding anything to the contrary contained in this Sublease, in each case where Lessor's consent or approval is required under the Lease, Lessor's and Sublessor's consent or approval shall be required under this Sublease.

21. Sublessor's Right to Perform Sublessee's Obligations. If Sublessee fails to perform any of its obligations under this Sublease or the Lease as required by this Sublease in a manner reasonably satisfactory to Sublessor, and if such failure shall not be cured for thirty (30) days after written notice from Sublessor to Sublessee, Sublessor shall have the right, but not the obligation to take any and all actions required to be taken by Sublessee pursuant to the provisions hereof or the Lease which may be necessary to prevent a default under or to assure complete compliance with the terms of this Sublease or the Lease. All costs and expenses reasonably incurred by Sublessee pursuant to this Section 21, together with interest at the maximum rate allowed by law, shall be payable by Sublessee, as additional rent, within five (5) days after delivery of a statement of any such costs to Sublessee and Sublessee's failure to do so shall be a default hereunder and Sublessor shall be entitled to exercise all rights and remedies available to Sublessor.

22. Default by Sublessor. Sublessor shall not be deemed to be in default in the observance or performance of any of the covenants hereunder unless any such default shall continue for a period of thirty (30) days after written notice to Sublessor (provided if such default is incapable of being cured in a reasonable manner within thirty (30) days, then Sublessor shall not be deemed to be in default for so long as Sublessor diligently prosecutes such cure to completion), or unless such default shall cause the termination of the Lease, in which event such failure to observe or perform shall be deemed an immediate default. In no event shall Sublessee have the right to terminate this Sublease or withhold rent as a result of Sublessor's default (unless such default shall cause the termination of the Lease) and Sublessee's remedies shall be limited to an action for damages, injunction or specific performance of this Sublease. Notwithstanding anything to the contrary set forth in this Sublease, under no circumstances shall Sublessor be

liable for injury to Sublessee's business, for any loss of income or profit therefrom or any indirect, consequential or punitive damages.

23. Holding Over. Nothing contained in the Lease or this Sublease shall be construed as authorizing Sublessee to remain in possession of the Demised Premises beyond the expiration or earlier termination of this Sublease and Sublessee shall indemnify Sublessor against all loss, damage or liability (excluding any indirect or consequential damages) which may result from Sublessee's holding over.

24. Condition Precedent. This Sublease, and the rights and obligations of Sublessor and Sublessee under this Sublease, are subject to the condition that Lessor consent to this Sublease ("Lessor's Consent"), which consent shall (i) be in form and substance satisfactory to Sublessor and Sublessee, and (ii) include non-disturbance and attornment provisions such that, in the event of the termination of the Lease, Lessor shall not disturb Sublessee's possession of the Demised Premises and shall recognize Sublessee as its direct tenant on the terms and conditions of this Sublease. If Lessor's consent is not received on or before July 15, 2008, either Sublessor or Sublessee may terminate this Sublease by giving written notice of such termination to the other party at any time prior to receipt of Lessor's Consent. If this Sublease is so terminated by Sublessor or Sublessee, neither Sublessor nor Sublessee shall have any further rights or obligations hereunder. Sublessor and Sublessee each agrees to supply information and/or execute and acknowledge further documents in connection with this Sublease that are reasonably required by Lessor in connection with Lessor's review of this Sublease.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, Sublessor and Sublessee execute this Sublease as of the date first written above.

Sublessor:

THE THOMAS KINKADE COMPANY, LLC

By: /s/ Robert Murray
Name: Robert Murray
Title: VP, General Counsel + Secretary

Sublessee:

FLEXTRONICS INTERNATIONAL USA, INC.

By: _____
Name:
Title:

IN WITNESS WHEREOF, Sublessor and Sublessee execute this Sublease as of the date first written above.

**Sublessor:**

**THE THOMAS KINKADE COMPANY, LLC**

By:_____
Name:
Title:

**Sublessee:**

**FLEXTRONICS INTERNATIONAL USA, INC.**

By: *[signature]*
Name: Christopher Collier
Title: Asst. Secretary