JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
LAURENT CHEN (191661)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: lchen@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PACIFIC METRO, LLC**<br>A California Limited Liability Company,<br>fka The Thomas Kinkade Company,<br>LLC, fka Media Arts Group, Inc.<br><br>Debtor.<br><br>900 Lightpost Way<br>Morgan Hill, CA 95037<br><br>Employer Tax I.D. No.: 26-3534146 | Case No. 10-55788-RLE-11<br><br>Chapter 11<br><br>Date: TBA<br>Time: TBA<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3099<br>San Jose, CA 95113<br>Judge: Honorable Roger L. Efremsky |

## EXHIBIT C

## TO

## MOTION FOR ORDER UNDER SECTIONS 105 AND 365(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO REJECT NONRESIDENTIAL REAL PROPERTY LEASES AS OF THE PETITION DATE AND <u>ESTABLISH BAR DATE FOR LEASE REJECTION CLAIM</u>

# CONSENT TO SUBLEASE

THIS CONSENT TO SUBLEASE ("Consent") is made and entered into effective July 17, 2008 by and among TBI-Mission West, LLC, a California limited liability company ("Landlord"); The Thomas Kinkade Company, LLC, a California limited liability company, formerly known as Media Arts Group, Inc., a Delaware corporation ("Tenant"); and Flextronics International USA, Inc., a California corporation ("Subtenant").

## RECITALS

A. Landlord and Tenant are parties to that certain Lease dated December 20, 1999, as amended by that certain First Amendment to Lease dated as of July 26, 2000, that certain Second Amendment to Lease dated as of December 3, 2002, that certain Third Amendment to Lease dated as of November 11, 2004 and that certain Fourth Amendment to Lease dated as of July 17, 2008 (collectively, the "Master Lease"), pursuant to which Landlord leases to Tenant, and Tenant leases from Landlord, those certain premises consisting of approximately one hundred fifty-five thousand five hundred twenty (155,520) rentable square feet in the building commonly known as 925 Lightpost Way, in the City of Morgan Hill, County of Santa Clara, State of California, as more particularly described in the Master Lease (the "Premises").

B. Pursuant to that certain Sublease dated as of July 17, 2008 (the "Sublease"), Tenant has agreed to sublease to Subtenant, and Subtenant has agreed to sublease from Tenant, the Premises.

C. Concurrently herewith, Landlord and Tenant have entered into the Fourth Amendment to Lease referred to above (the "Fourth Amendment"), pursuant to which Landlord has agreed to provide Tenant with a reduction in the rent payable under the Lease.

D. Landlord is willing to consent to the Sublease on the terms and conditions set forth in this Consent.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. <u>Consent to Sublease</u>. Landlord hereby consents to the subletting of the Subleased Premises by Tenant to Subtenant, such consent being subject to and upon the following terms and conditions. Tenant and Subtenant hereby acknowledge and agree that although not a direct party to the Sublease, Landlord is nonetheless a third party beneficiary of the same.

2. <u>Consent to Change in Use</u>. Landlord hereby consents to a change in the permitted use of the Premises during the term of the Sublease to permit the use of the

-1-

Premises for research and development, manufacturing, warehouse, and office purposes. Neither Tenant nor Subtenant nor any other party shall use the Premises for any other purpose during the term of the Sublease without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

3. Consent to Alterations by Subtenant; Restoration Obligations.

(a) Subject to Subtenant's compliance with the provisions of paragraph 12 of the Master Lease, Landlord hereby consents to the following Alterations to be made to the Premises by Subtenant: (i) enlarging one (1) of the existing overhead coiling loading doors between column line 1 and column line 2 (as such column lines are shown on those certain plans prepared by MBT Architecture for Media Arts Group, Inc. dated August 22, 2001, Sheet A0.1, such plans being referred to herein as the "As-Built Plans") from approximately 10' wide by 12' high to 12' wide by 15' high; (ii) adding one (1) additional overhead coiling loading door at column line 7 (as such column line is shown on the As-Built Plans); (iii) the removal of a portion of the structural concrete slab between column line 1 and column line 5 (as such column lines are shown on the As-Built Plans), replacing the slab with a thickened concrete slab resulting in the same finish elevation; and (iv) the removal of interior, non-structural walls as shown (highlighted) on the floor plan attached as Exhibit A. (collectively, the "Initial Flextronics Alterations"). Notwithstanding the provisions of paragraph 12 of the Master Lease to the contrary, neither Tenant nor Subtenant shall be required to remove any of the Initial Flextronics Alterations from the Premises upon the expiration or sooner termination of the Sublease, nor shall Tenant or Subtenant be required to restore those portions of the Premises that were altered by the Initial Flextronics Alterations to the condition that existed prior to such Initial Flextronics Alterations. For example, neither Tenant nor Subtenant shall be required to reconstruct the interior wall that was removed as described in item (iv) above.

(b) Notwithstanding the provisions of paragraph 12 of the Master Lease to the contrary, Landlord's consent shall not be required for any non-structural, interior Alterations to the Premises that are made by Subtenant during the term of the Sublease if the cost of such Alterations does not exceed $50,000 per occurrence or $250,000 cumulatively over the term of the Sublease. All other Alterations shall be subject to Landlord's consent as provided in paragraph 12 of the Master Lease and all Alterations shall be constructed in accordance with the provisions of paragraph 12 of the Master Lease. Notwithstanding the provisions of paragraph 12 of the Master Lease to the contrary, neither Tenant nor Subtenant shall be required to remove the Initial Flextronics Alterations described in paragraph 3(a) above, the Existing TKC Alterations described in paragraph 3(c) below, or any non-structural, interior Alterations for which Landlord's consent is not required as provided herein, upon the expiration or sooner termination of the Sublease or the Master Lease. With respect to any Alterations for which Landlord's consent is required as provided herein, Landlord shall notify Tenant and Subtenant at the time of Landlord's consent to such Alterations whether Subtenant shall be required to remove such Alterations from the Premises upon the expiration of the Sublease and restore those portions of the Premises affected by such Alterations to their condition existing prior to the installation and/or construction of such Alterations.

\NRABY\765785.5
Case: 071608-025098  Doc# 19-3   Filed: 06/08/10   Entered: 06/08/10 14:02:55   Page 3 of 14

(c) Landlord hereby agrees that Landlord shall not require Tenant to remove any Alterations that were made to the Premises by or for Tenant prior to the date of this Consent (the "Existing TKC Alterations"), nor shall Tenant be required to restore any portion of the Premises that may have been affected by such Existing TKC Alterations to its condition as of the Commencement Date of the Master Lease, except that Tenant shall remain liable for the repair of any damage to the Premises as provided in the Master Lease and shall otherwise surrender the Premises at the expiration of the Term in the condition required under paragraph 13 of the Master Lease.

4. <u>No Modification of Master Lease</u>. Nothing contained in this Consent shall either:

(a) operate as a representation or warranty by Landlord and, except as otherwise expressly provided in paragraph 7 below, Landlord shall not be bound or estopped in any way by the provisions of the Sublease;

(b) be construed to modify, waive or affect (i) any of the provisions, covenants or conditions in the Master Lease, (ii) any of Tenant's obligations under the Master Lease, or (iii) any rights or remedies of Landlord under the Master Lease or otherwise or to enlarge or increase Landlord's obligations or Tenant's rights under the Master Lease or otherwise; or

(c) be construed to waive any present or future breach or default on the part of Tenant under the Master Lease.

In case of any conflict between the provisions of this Consent and the provisions of the Sublease, the provisions of this Consent shall prevail unaffected by the Sublease.

5. <u>Sublease Subject to Master Lease</u>. The Sublease shall be subject to and subordinate at all times to the Master Lease and all of its provisions, covenants and conditions. Subtenant acknowledges that it has received a full copy of the Master Lease from Tenant. This Consent shall not operate as consent or approval by Landlord of any of the provisions, covenants and conditions of the Sublease and, except as expressly provided in paragraph 9 below, Landlord shall not be bound thereby.

6. <u>No Release of Liability</u>. Neither the Sublease nor this Consent thereto shall release or discharge Tenant from any liability under the Master Lease and Tenant shall remain primarily liable and responsible for the full performance and observance of all of the provisions, covenants and conditions set forth in the Master Lease on the part of the Tenant to be performed and observed. Any breach or violation of any provision of the Master Lease by Subtenant shall be deemed to be and shall constitute a default by Tenant.

7. <u>No Consent to Further Subletting</u>. This consent by Landlord shall not be construed as consent to any further subletting or assignment of any interest in the Master Lease or Sublease either by Tenant or Subtenant. The Sublease may not be assigned,

-3-

\NRABY\765785.5

Case 07-16008-1825798  Doc# 19-3  Filed: 06/08/10  Entered: 06/08/10 14:02:55  Page 4 of 14

renewed or extended nor shall the Premises, or any part thereof, be further sublet without prior written consent of Landlord in each instance.

8. Sublease Rents.

(a) Landlord, Tenant and Subtenant acknowledge that, pursuant to the express terms of the Sublease, commencing with the commencement date under the Sublease and continuing for the balance of the term of the Sublease, including any extension of the term pursuant to the terms of the Sublease, Subtenant shall pay directly to Landlord all monthly base rent payable under paragraph 4 of the Sublease (the "Sublease Rents") and all additional rent payable under the Sublease, including operating expenses and real property taxes, subject to any abatement periods expressly set forth in the Sublease. During the Sublease term Landlord shall deliver any invoices for monthly rent and/or additional rent, statements of estimated and/or actual operating expenses, and annual reconciliations of operating expenses payable under the Master Lease to both Tenant and Subtenant. Furthermore, Landlord shall notify Tenant in writing of Landlord's receipt of the monthly Sublease Rents and additional rent paid by Subtenant promptly following Landlord's receipt thereof. All Sublease Rents and additional rent so collected by Landlord shall be applied against the monthly rent and additional rent payable by Tenant to Landlord under the Master Lease; provided, however, that nothing herein shall be deemed to affect Tenant's primary liability for the full and prompt payment of the monthly rent and additional rent payable under the Master Lease as and when it becomes due. Tenant agrees that payments to Landlord shall satisfy and discharge Subtenant's obligation for the payment of monthly base rent and other amounts, if any, under the Sublease to the full extent of such payments made to Landlord. Landlord shall not, however, by reason of the collection of the Sublease Rents and additional rent from Subtenant be deemed liable to Subtenant for any failure of Tenant to perform and comply with Tenant's obligations under the Master Lease or the Sublease. Nothing contained herein shall be deemed to create any right of Tenant to the refund of any rents or other amounts paid or payable to Landlord by Subtenant.

(b) Notwithstanding the provisions of paragraph 8(a) to the contrary, in the event of a Default by Tenant under the Master Lease, then in lieu of the monthly base rent payable in accordance with paragraph 4 of the Sublease, Subtenant shall pay directly to Landlord the monthly base rent set forth in Schedule 1 attached hereto and made a part hereof, which monthly base rent is referred to herein as the "Default Step-Up Monthly Rent." For purposes of this paragraph 8, the term "Default" shall mean that Tenant is in default under paragraph 25.1.1 of the Master Lease (i.e., Tenant has failed to pay any rent or other sum required to be paid under the Master Lease within fourteen (14) days after written notice from Landlord). Subtenant shall commence paying the Default Step-Up Monthly Rent to Landlord following Subtenant's receipt of written notice from Landlord that a Default has occurred (the "Default Notice") and shall continue paying the Default Step-Up Monthly Rent to Landlord until such time as Landlord notifies Subtenant that Tenant has cured the Default (the "Cure Notice"). Landlord shall deliver a Cure Notice to Subtenant no later than five (5) days after the Default has been cured. If Landlord delivers a Cure Notice to Subtenant, then thereafter and as provided in paragraph 8(a) above, Subtenant shall pay all Sublease Rents and other amounts due

-4-

under the Sublease to Landlord until such time as Landlord delivers a Default Notice to Subtenant, and Subtenant shall have no obligation to pay the Default Step-Up Monthly Rent to Landlord for any month following the date of the Cure Notice and prior to the date of any subsequent Default Notice. Furthermore, if Tenant cures any Default, then Landlord shall promptly refund to Subtenant the difference between the Sublease Rents and the Default Step-Up Monthly Rent previously paid to Landlord by Subtenant for each month that had been in Default that is subsequently cured by Tenant. Tenant shall reimburse Subtenant for the excess of the Default Step-Up Monthly Rent paid by Subtenant, over the Sublease Rents specified for the applicable months (less any amounts refunded from Landlord to Subtenant pursuant to this paragraph 8(b), within thirty (30) days of receipt of an invoice from Subtenant.

9. Nondisturbance and Attornment.

(a) If the Master Lease is terminated by Landlord as a result of a default thereunder by Tenant, or the Master Lease is terminated by the debtor or trustee in bankruptcy in connection with a bankruptcy filing by Tenant, then so long as Subtenant is not then in default under the Sublease beyond any cure period provided for in the Sublease, the Sublease shall not be terminated and Landlord shall recognize Subtenant's right to possession of the Premises pursuant to the terms of the Sublease, as such terms may be modified as provided in paragraph 9(c) below. In such event, Subtenant shall attorn to Landlord and recognize Landlord as the sublessor under the Sublease and the Sublease shall remain in full force and effect as a direct lease between Landlord and Subtenant pursuant to the terms thereof.

(b) Landlord hereby agrees that, so long as Subtenant is not in default under the Sublease beyond any applicable cure periods, then (i) Subtenant shall not be joined as an adverse or party defendant in any action or proceeding which may be instituted or commenced by Landlord to terminate or enforce the Master Lease; (ii) Subtenant shall not be evicted from the Premises, nor shall any right of Subtenant under the Sublease be affected in any way by reason of any modification of or default under the Master Lease, except as set forth in this Consent; and (iii) the leasehold estate of Subtenant shall not be terminated or disturbed during the term of the Sublease by reason of any default under the Master Lease, and Landlord will recognize and honor Subtenant occupying the Premises, pursuant to the terms and conditions of the Sublease and this Consent. Landlord may join Subtenant in an action to terminate or enforce the Master Lease only if Subtenant is in default under the Sublease beyond any time given to Subtenant in the Sublease to cure such default.

(c) Landlord and Subtenant agree that if the Sublease becomes a direct lease between Landlord and Subtenant as provided above, the Sublease shall be deemed amended as follows: (i) paragraph 8 of the Sublease shall be deleted in its entirety; (ii) paragraphs 8, 33, and 34 of the Master Lease shall be incorporated into the Sublease and shall be binding on Subtenant; and (iii) during the balance of the Sublease term, Subtenant shall pay the Default Step-Up Monthly Rent in accordance with <u>Schedule 1</u>.

10. Representations and Warranties.

(a) Landlord hereby represents and warrants to Subtenant that: (i) the term of the Master Lease is scheduled to expire on May 31, 2018; and (ii) to Landlord's actual knowledge, neither Landlord nor Tenant is in default under the Master Lease, nor has any event occurred which, after any applicable notice and/or the expiration of any grace period, shall constitute a default by either Landlord or Tenant under the Master Lease.

(b) Tenant hereby represents and warrants to Landlord that, to Tenant's actual knowledge, Landlord is not in default under the Master Lease, nor has any event occurred which, after any applicable notice and/or the expiration of any grace period, shall constitute a default by Landlord under the Master Lease.

11. **Agreement Made With Full Knowledge**. Each of the parties hereto has had the opportunity to review the matters discussed and contemplated by this Agreement, the Master Lease and the Sublease.

12. **Successors and Assigns**. This Consent shall be binding upon and inure to the benefit of the undersigned and their legal representatives, transferees, successors and assigns. This Consent is assignable by Landlord, and when so assigned, with or without notice to Tenant and/or Subtenant, Tenant and/or Subtenant shall be liable to the assignees of this Agreement. Neither Tenant nor Subtenant shall assign this Consent to any party without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

13. **Modification**. No term or provision of this Consent shall be amended, modified, altered, waived or supplemented except by a writing signed by the parties hereto.

14. **Entire Agreement**. This Consent embodies the entire agreement among the parties hereto with respect to the matters set forth herein, and supersedes all prior agreements among the parties with respect to the matters set forth herein. No course of prior dealing among the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any of the terms hereof.

15. **Notices**. All notices and documents permitted or required to be delivered under the provisions of this Agreement shall be delivered by hand, by confirmed facsimile transmission, by overnight delivery, or by deposit with United States mail by registered or certified mail, return receipt requested, postage prepaid, and shall be deemed so delivered at the time delivered by hand, one (1) business day after transmission by facsimile, upon confirmed facsimile transmission, one (1) business day after deposit with an overnight carrier for "Next Business Day" delivery, or five (5) business days after placement in the United States mail by registered or certified mail, return receipt requested, postage prepaid, and addressed as follows:

>   If to Landlord:
>
>   TBI-Mission West, LLC
>   c/o Toeniskoetter & Breeding, Inc. Development
>   1960 The Alameda
>   San Jose, CA 95126
>   Attn: Mr. Brad W. Krouskup
>
>   If to Sublessor:
>
>   The Thomas Kinkade Company
>   900 Lightpost Way
>   Morgan Hill, CA 95037
>   Attn: Legal Department

If to Subtenant:

Flextronics International USA, Inc.
2090 Fortune Drive
San Jose, California 95131
Attn: Mario Ochoa

With a copy to:

Robins, Kaplan, Miller & Ciresi L.L.P.
800 Boylston Street
25th Floor
Boston, MA 02199-7610
Attn: Mark S. LaConte, Esq.

16. <u>Governing Law</u>. This Agreement shall be enforced and interpreted according to the laws of the State of California, without regard to its conflicts of law rules.

17. <u>Severability</u>. The provisions of this Agreement shall be severable in the event that any of the provisions hereof are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, and the remaining provisions shall remain enforceable to the fullest extent permitted by law.

18. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, including by facsimile, and each of such counterparts shall for all purposes be deemed original, and all such counterparts shall together constitute one and the same instrument.

19. <u>Headings</u>. Headings or captions in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

20. <u>Jurisdiction and Venue</u>. The parties hereto acknowledge and agree that any legal action or proceedings with respect to this Agreement shall be brought in Santa Clara County, California, or in any United States District Court of California having jurisdiction in Santa Clara County, and the parties hereto hereby submit to each such jurisdiction and hereby waive any and all objections as to venue in one of the above stated courts.

*[remainder of page intentionally left blank]*

21. <u>Attorneys' Fees</u>. If any action at law or in equity, or any arbitration proceeding, shall be brought for or on account of any breach of or to enforce or interpret any of the terms, covenants, agreements or conditions of this Agreement, the prevailing party shall be entitled to recover from the other party such prevailing party's costs incurred in such action or proceeding, including without limitation reasonable attorney's fees.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, effective as of the day and year first above written.

<u>LANDLORD</u>

TBI-Mission West, LLC,
a California limited liability company

By: TBI-MWP I, a California limited
    partnership, Manager

    By: Toeniskoetter & Breeding, Inc.
        Development, a California corporation,
        General Partner

        By: _____
            Brad W. Krouskup,
            President and CEO


<u>SUBLESSOR</u>

The Thomas Kinkade Company, LLC,
a California limited liability company

By: _____

Its: _____


<u>SUBTENANT</u>

Flextronics International USA, Inc.,
a California corporation

By: _____

Its: _____

-9-

\NRABY\765785.5
071608-10225099

Case: 10-55788   Doc# 19-3   Filed: 06/08/10   Entered: 06/08/10 14:02:55   Page 10 of 14

21. <u>Attorneys' Fees</u>. If any action at law or in equity, or any arbitration proceeding, shall be brought for or on account of any breach of or to enforce or interpret any of the terms, covenants, agreements or conditions of this Agreement, the prevailing party shall be entitled to recover from the other party such prevailing party's costs incurred in such action or proceeding, including without limitation reasonable attorney's fees.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, effective as of the day and year first above written.

<u>LANDLORD</u>

TBI-Mission West, LLC,
a California limited liability company

By: TBI-MWP I, a California limited
partnership, Manager

    By: Toeniskoetter & Breeding, Inc.
        Development, a California corporation,
        General Partner

        By: _____
            Brad W. Krouskup,
            President and CEO

<u>SUBLESSOR</u>

The Thomas Kinkade Company, LLC,
a California limited liability company

By: _/s/_ [signature]

Its: _VP, General Counsel + Secretary_

<u>SUBTENANT</u>

Flextronics International USA, Inc.,
a California corporation

By: _____

Its: _____

-9-

\NRABY\765785.5
071608-10225099
Case: 10-55788   Doc# 19-3   Filed: 06/08/10   Entered: 06/08/10 14:02:55   Page 11 of 14

21. <u>Attorneys' Fees</u>. If any action at law or in equity, or any arbitration proceeding, shall be brought for or on account of any breach of or to enforce or interpret any of the terms, covenants, agreements or conditions of this Agreement, the prevailing party shall be entitled to recover from the other party such prevailing party's costs incurred in such action or proceeding, including without limitation reasonable attorney's fees.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, effective as of the day and year first above written.

<u>LANDLORD</u>

TBI-Mission West, LLC,
a California limited liability company

By: TBI-MWP I, a California limited
    partnership, Manager

    By: Toeniskoetter & Breeding, Inc.
       Development, a California corporation,
       General Partner

       By: _____
           Brad W. Krouskup,
           President and CEO


<u>SUBLESSOR</u>

The Thomas Kinkade Company, LLC,
a California limited liability company

By: _____

Its: _____


<u>SUBTENANT</u>

Flextronics International USA, Inc.,
a California corporation

By: /s/ [signature]

Its: Asst. Secretary

-9-

## Schedule 1

### Default Step-Up Monthly Rent

| Dates | Rent/s.f. | Monthly NNN Rent |
|---|---|---|
| 8/1/08 – 4/30/09 | $.1000 | $15,552.00 |
| 5/1/09 – 7/31/09 | .6500 | 101,088.00 |
| 8/1/09 – 7/31/10 | .6695 | 104,120.64 |
| 8/1/10 – 7/31/11 | .6896 | 107,244.26 |
| 8/1/11 – 7/31/12 | .7603 | 118,237.59 |
| 8/1/12 – 7/31/13 | .7831 | 121,784.71 |
| 8/1/13 – 7/31/14 | .8066 | 125,438.26 |
| 7/1/14 – 7/31/15 | .8308 | 129,201.40 |

-10-

\NRABY\765785.5

Case: 10-50788   Doc# 19-3   Filed: 06/08/10   Entered: 06/08/10 14:02:55   Page 13 of 14

# EXHIBIT A



Case: 10-55788  Doc#: 19-3  Filed: 06/08/10  Entered: 06/08/10 14:02:55  Page 14 of 14